149 LOUISIANA REPORTS

(90 South. 18)

No. 24943.

## STATE v. McCORMICK.

## In re McCORMICK.

(Oct. 31, 1921.)

*(Syllabus by Editorial Staff.)*

Mandamus &⟶14(3)—Prohibition &⟶17—Will not lie where trial judge has not been afforded opportunity to rule on the matter complained of.

Where the record shows that a trial judge was not afforded an opportunity to rule upon the question of a continuance, application for mandamus and prohibition must be denied.

Alvin G. McCormick, being prosecuted for nonsupport of his wife and child in necessitous circumstances, applies for mandamus and prohibition to the Judge of the Juvenile Court on the ground of refusal of a necessary continuance. Application dismissed, at relator's costs.

Jones T. Prowell, of New Orleans, for applicant.

PROVOSTY, J. This is an application for mandamus and prohibition to the judge of the juvenile court. Relator alleges that to the affidavit against him for nonsupport of wife and child in necessitous circumstances he filed a demurrer, and that on the day fixed for the trial of the case he protested against going to trial, on the ground that his attorney, Jones T. Prowell, was a member of the Legislature, that the Legislature was in session, and that said attorney was not present, and could not be present, for the reason that he was engaged as a senator in the official business of the state; and that, notwithstanding this protest, the juvenile court ordered relator to trial, and proceeded with the trial of relator.

In his return to the rule nisi the judge of the juvenile court says:

"Respondent was absent from court duties from August 25, until September 22, 1921, and knows nothing of the matters stated by relator's counsel in regard to this matter, except as stated to me by the court officers after my return, and I obtained my only information after Mr. Prowell, counsel of defendant, called at the court on Saturday morning, August 24, 1921, very hastily informed me that he had obtained a prohibition to stop further proceedings, said very little more, and would not stop to explain what it was all about. A few ·minutes afterwards Mr. John Klotz, deputy clerk, came down stairs, and left the petition and the order signed by the Chief Justice with me. I took notice, and said I would make return, etc. I knew that morning the case had been set down for action of some sort, as the record was on my desk, but I knew nothing of the case until Mr. Prowell came in. Mr. Gauche, assisting the state, was also present.

"I learned that Judge Humphreys, who was sitting for me, had been anxious to try the case, as it was for the support of wife and child in necessitous circumstances. He learned after arraignment that Mr. McBride and Mr. Prowell were of counsel. Learning that Mr. Prowell declined to attend the hearing of the case because he was in the State Senate then in special session, Judge Humphreys fixed the case for trial on a Saturday when Mr. Prowell was in the city. I notice from the minutes the matter was fixed for Saturday, September 12th and 17th and continued both times, and then probably fixed by Judge Humphreys for September 24th, and he expected to be present.

"The stand taken by Judge Humphreys was that the character of the case, its strong appeal to him as a juvenile judge, demanded a speedy trial, and as Mr. Prowell was in the city on Saturdays, he saw no reason why the case should not be tried. The wife and child were alleged to be in want, and, as an interested judge with sympathy in cases of this kind, he wanted to try the case, and I understand had told Mr. McBride, one of counsel, that he would insist on the trial on a Saturday. I returned four days sooner than anticipated, and this matter fell to me. I have related what occurred. As a matter of fact, Mr. Prowell was in court; the Legislature had recessed from Friday to Monday night.

"Your honors will have notice, and I need not state, that the matters stated to have occurred in the juvenile court on the morning of Saturday, September 24, 1921, did not occur, except as stated above. Evidently counsel had anticipated a discussion with Judge Humphreys, had prepared his petition, had called

on the Chief Justice, and had the order signed, called on the juvenile court, found me in charge, gave me notice that he had obtained writ, as above stated, confirmed by Mr. John Klotz, that I accepted notice, and the matter has so stood and still remains in statu quo.

"It is impossible for counsel to say what I may or not have done in this matter; he could not anticipate, except that I would have followed the law under my oath of office. It is not fair to me that I should be presented to your honors as assuming the attitude alleged by relator, when such matters and facts did not transpire. What might have occurred if my able colleague, Judge Humphreys, had been in charge, I cannot say. But so far as I am concerned, nothing at all occurred, except giving me notice, etc., and counsel for relator has no right or justification to present me to your honors as deserving judicial chastisement in the form a writ of mandamus, prohibition, and certiorari."

The minutes of the juvenile court, copy of which accompanies this return, contain no entry later in date than September 17, 1921, and hence corroborate the judge in his statement as to what took place on Saturday 24th. We conclude that the trial judge was not afforded an opportunity to rule upon the question of continuance vel non, and that for this, if for no other reason, the present application must be dismissed.

It is ordered that the present application be dismissed, and that the relator pay the costs of same.